UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Abdel-Fattah

      v.                                    Civil No. 22-cv-125-JL
                                        Opinion  No. 2023 DNH 088

Kelly et al


## **SUMMARY ORDER**

This case involves the plaintiff's burden of proof in a legal malpractice case, and, in particular, the opinion evidence required to sustain that burden.  The plaintiff in this case, Khaled Abdel-Fattah, asserts breach of contract and legal malpractice claims against his former attorney, James D. Kelly, and Atty. Kelly's law firm, Kelly Law PLC.[1] The claims arise from Atty. Kelly's representation of Abdel-Fattah in a state court case from September 2018 until the court approved Atty. Kelly's motion to withdraw in May 2019.  Abdel-Fattah takes issue with Atty. Kelly's failure to file both a motion to dismiss and a counterclaim against the state court plaintiff.  Atty. Kelly moves for summary judgment on two grounds.  He argues that (1) Abdel-Fattah cannot establish, as a matter of law, that Atty. Kelly's actions harmed him since Abdel-Fattah was able to continue litigating his case after Atty. Kelly withdrew, and (2) Abdel-Fattah cannot prove essential elements of his claims because he failed to disclose an expert witness.

---

[1] The court will refer to the defendants jointly as Atty. Kelly throughout the Order.

The court has jurisdiction under 28 U.S.C. § 1332(a) (diversity).  After reviewing the parties' submissions and holding oral argument, the court grants the motion for summary judgment based on Atty. Kelly's second argument.  An expert witness is required to enable the jury to assess the adequacy of Atty. Kelly's actions and whether they harmed Abdel-Fattah, as this analysis turns on matters of legal judgment and procedural and substantive aspects of the law, which are not areas of common knowledge.  Abdel-Fattah's failure of proof on this front at this stage—after the passage of the expert disclosure and discovery deadlines—is fatal to his claims.

***Applicable Legal Standard.***  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute exists when a jury can reasonably interpret the evidence in the non-movant's favor[,]" and "[a] material fact is one that might affect the outcome of the suit under the governing law." Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 69 (1st Cir. 2016) (internal quotation omitted).  In particular, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," as "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

*Background.*  The following facts are undisputed.  In August 2018, Abdel-Fattah's business partner initiated a state court action against him ("the 451 Case")[2] to determine the distribution of their proceeds from the sale of three homes that they renovated.  The following month, Abdel-Fattah hired Atty. Kelly to represent him, and the parties signed a legal services agreement.  The contract provided for a hybrid fee arrangement, under which Abdel-Fattah agreed to pay a lump sum of $550 in order to "discuss . . . information regarding th[e] case in detail," as well as a retainer fee from which hourly charges could be drawn "[a]fter [the parties] finished discussing all the facts and details" of the case.[3]  Atty. Kelly filed an appearance in the 451 Case on September 24, 2018.

In a May 14, 2019 e-mail, Abdel-Fattah expressed disappointment to Atty. Kelly regarding his legal services and the fee arrangement.  Abdel-Fattah asserted that they had only "discuss[ed] the case and attend[ed] one day [of] court" at that point, and he was "upset" that Atty. Kelly "ha[d] not done anything to counter" the state court plaintiff "since the case [was] file[d]."[4]  He requested that they work out a "flat fee arrangement."[5]  Atty. Kelly refused and asked that Abdel-Fattah pay the outstanding fees reflected in a

---

[2] The case, now on appeal, is before Judge Jacalyn A. Colburn in Hillsborough County Superior Court South, and the case number is 226-2018-CV-00451.

[3] Legal Services Agreement (doc. no. 22-3) at 1.

[4] See May 14, 2019 Email Exchanges (doc. no. 22-4) at 3.

[5] Id. at 1.

prior invoice.[6]  The conversation turned to termination and withdrawal, with Abdel-Fattah noting that they were "not on [the] same page," and "a counterclaim should [have] been file[d] long ago."[7]  That day, Atty. Kelly submitted a motion to withdraw based on his understanding that Abdel-Fattah had terminated the representation.[8]  The court approved the motion the following day.

Abdel-Fattah proceeded pro se for a period after Atty. Kelly withdrew from the 451 Case.  He filed a counterclaim in August 2019, alleging that his business partner engaged in forgery, embezzlement, larceny, and other wrongdoing.[9]  The clerk's office did not accept the counterclaim because Abdel-Fattah did not pay the filing fee.  After that, Abdel-Fattah repurposed the counterclaim to initiate a new case ("the 724 Case")[10] against his business partner in the same court.  The state court dismissed the 724 Case as duplicative of the 451 Case and directed that "further litigation involving" the same subject matter "should be filed in the 451 Case."[11]  In dismissing the 724 Case, the court noted that "it is questionable whether a counterclaim would even be necessary" in the 451 Case, given that the court had previously notified the parties that it would consider

---

[6] See id. at 1-3.

[7] Id. at 2.

[8] See id. at 4 (Atty. Kelly states that "you . . . told me you are terminating the agreement if I won't do it on a flat fee basis.  You terminated the representation.").

[9] See Aug. 29, 2019 Counterclaim (doc. no. 22-8).

[10] Like the 451 Case, this case was before Judge Jacalyn Colburn in Hillsborough County Superior Court South.  The case number was 226-2019-CV-00633.

[11] See Hillsborough County Superior Court South Apr. 21, 2020 Order (doc. no. 22-10) at 7.

Abdel-Fattah's "allegations regarding expenses and breach of duty," as presented in his counterclaim, when "deciding the proper relief in [the 451 Case]."[12]

Abdel-Fattah also submitted motions to dismiss in the 451 Case, which the court denied. The court held that his motion to dismiss based on improper service was untimely, adding that, based on the return of service, Abdel-Fattah was properly served.[13] The court further concluded that Abdel-Fattah was adequately identified as the defendant in the complaint, contrary to another one of his arguments for dismissal. The court reasoned that, "[t]o the extent that the complaint serviced upon [Abdel-Fattah], in its opening paragraph, makes one reference to Christine Eno, this is obviously a scrivener's error. The caption clearly identifies the defendant as the party against whom the plaintiff complains."[14] The 451 Case proceeded to trial in June 2022, and the court rendered a declaratory judgment distributing the business proceeds in August 2022. During oral argument in this case, on July 20, 2023, the parties stated that cross-appeals are currently pending before the New Hampshire Supreme Court.

Abdel-Fattah initiated this action in April 2022, asserting breach of contract and legal malpractice claims against Atty. Kelly. According to Abdel-Fattah, Atty. Kelly "collected his retainer and failed to take any legal action in the [451 C]ase for over [eight]

---

[12] Id.

[13] See Hillsborough County Superior Court South Apr. 22, 2022 Order (doc. no. 22-11) at 2.

[14] Id.

months."[15]  More specifically, Abdel-Fattah claims that Atty. Kelly did not file a motion to dismiss based on improper service, a motion to dismiss arguing that "the complaint was against a different person, Christine Eno," and a counterclaim.[16]  While the complaint does not state the content of the counterclaim, Abdel-Fattah does allege that Atty. Kelly "was informed of issues . . . that could have been presented in the counterclaim."[17]

In August 2022, this court denied Atty. Kelly's motion to dismiss Abdel-Fattah's claims as time-barred.  The following month, this court held a conference with the parties to discuss preliminary matters and thereafter approved a litigation schedule that included a February 28, 2023 deadline for Abdel-Fattah to disclose his expert witness(es).[18]  Two months after that deadline passed, in late April, Abdel-Fattah provided the name and address of his expert witness in a written submission sent to the court, Atty. Kelly, and Atty. Kelly's counsel.[19]  Abdel-Fattah did not provide an expert report or information regarding the substance of the expert's opinion, however.

*Analysis*.  "[T]o prevail in [a] legal malpractice claim, the client [has] to prove that: (1) he and the attorney had an attorney-client relationship; (2) the attorney breached

---

[15] Compl. (doc. no. 1) at ¶ 7.

[16] Id. at ¶¶ 8-10.

[17] Id. at ¶ 11.

[18] See Defs.' Proposed Discovery Plan (doc. no. 17) at 3; Sept. 30, 2022 Order (doc. no 19) at 1 (approving the expert disclosure deadlines listed in the defendants' proposed discovery plan).

[19] See doc. no. 41.

his duty to exercise reasonable professional care, skill, and knowledge . . .; and (3) the

attorney's breach of the requisite standard of care proximately caused the client harm."

Yager v. Clauson, 169 N.H. 1, 5 (2016).  With respect to the causation element, the

"plaintiff must show with reasonable probability that the outcome would have been better

but for the attorney's negligent representation." Desimini v. Durkin, No. 14-CV-112-JD,

2015 WL 3548935, at *3 (D.N.H. June 8, 2015) (DiClerico, J.) (citing Pike v. Mullikin,

158 N.H. 267, 272 (2009)).  In order to make this showing, "a plaintiff must demonstrate

'what result should have occurred if the lawyer had not been negligent.'" Yager, 169

N.H. at 5 (quoting Carbone v. Tierney, 151 N.H. 521, 528 (2004)).

        Relevant here, "under New Hampshire law, 'absent exceptional circumstances,

expert testimony is necessary to inform the jury regarding the skill and care ordinarily

exercised by lawyers and to prove a breach thereof.'" Holder v. Gienapp, No. CIV. 06-

CV-221-JD, 2007 WL 952039, at *2 (D.N.H. Mar. 28, 2007) (DiClerico, J.) (quoting

Carbone, 151 N.H. at 528).  Also, "in most instances, expert testimony is required to

prove causation in a legal malpractice action." Carbone, 151 N.H. at 528.  Specifically,

"expert testimony may not be required when the evidence of negligence is so patent and

conclusive that reasonable persons can reach only one conclusion," but it is required

when the adequacy of the attorney's actions are "not a matter of common

knowledge . . . ." Wong v. Ekberg, 148 N.H. 369, 374 (2002) (internal quotation

omitted); see also Carbone, 151 N.H. at 528 (noting, with respect to the causation

element of a legal malpractice claim, that "[u]nless the causal link is obvious or can be

established by other evidence, expert testimony may be essential to prove what the lawyer should have done.").

In this case, expert testimony is required to inform the jury of the standard of care applicable to Atty. Kelly, whether he breached that standard, and if that breach caused harm to Abdel-Fattah.  For example, in order to judge the adequacy of Atty. Kelly's actions against the relevant standard of care, the jury would need to consider the legal force and validity of the arguments that would have been raised in the motion(s) to dismiss and counterclaim, and whether it was reasonable or preferable to raise those arguments after, instead of during, Atty. Kelly's period of representation.  To determine if Atty. Kelly's actions caused Abdel-Fattah's harm, the jury would need to appreciate the likely outcome of the motion(s) to dismiss and counterclaim, based on their merits, and how this would have affected the court's analysis of the proper distribution of the business proceeds.  These issues go to Atty. Kelly's judgment, as well as substantive and procedural aspect of the law.  They "are so distinctly related to the practice of law as to be beyond the ken of the average layperson."  Carbone, 151 N.H. at 528.

With respect to Abdel-Fattah's breach of contract claim, the New Hampshire Supreme Court has acknowledged that "[t]he failure to exercise the requisite skill, care[,] and diligence necessary to the proper rendition of legal services may give rise to an action for breach of contract . . . [or] it may constitute a tort."  Wong, 148 N.H. at 376 (internal quotation omitted).  While the New Hampshire Supreme Court does not "bar[] a plaintiff from pleading a legal malpractice claim under [both] theories," it has held that where "the theory underlying the plaintiff's breach of contract claim [is] not distinct from

the claim sounding in tort, . . . the plaintiff [is] required to introduce expert testimony to support both . . . claims." Id. at 376-77 (finding that the plaintiff was required to provide expert testimony of the lawyer's duty of care and breach where the plaintiff's allegations were "couched in terms of a breach of contract, . . . [but] basically did no more than reiterate the previously mentioned cause of action for legal malpractice"); see also Holder, 2007 WL 952039, at *2 ("expert testimony is required to prove the elements of a malpractice claim whether it is styled as a tort, such as negligence, or a breach of contract." (internal citation omitted)).  Abdel-Fattah does not identify, nor can the court find, any basis for the contract claim aside from the alleged wrongdoing that underlies the malpractice claim—that Atty. Kelly improperly or inadequately defended Abdel-Fattah in the 451 Case by not moving for dismissal and not filing a counterclaim.  Since the breach of contract claim rests on the same theory as the legal malpractice claim, expert testimony is required to prove the contract claim's essential elements, as well.[20]

At this point, the discovery and expert disclosure deadlines have passed, and Abdel-Fattah has not disclosed an expert witness.  Abdel-Fattah identified the name and address of his expert witness, but he did not provide a written report prepared by the expert or information regarding the subject matter, facts, and opinions about which the expert is expected to testify, as mandated under the disclosure requirements set forth in Federal Rule of Civil Procedure 26(a)(2).  Nor has he provided any opinion evidence,

---

[20] During the July 20, 2023 oral argument in this case, Abdel-Fattah initially stated that he did not believe that he needed an expert witness to establish his case.  Later on, he conceded that an expert witness may be necessary to inform the jury of relevant issues.

properly disclosed or not, admissible under Rule 702 to sustain his burden of proof on

duty, breach, or causation.  He has thus "fail[ed] to make a showing sufficient to establish

the existence of an element[,] [or elements,] essential to [his] case"—specifically duty,

breach, and causation—and Atty. Kelly is thereby entitled to judgment as a matter of law.

Celotex, 477 U.S. at 322.[21]

As part of this ruling, the court denies Abdel-Fattah's request (informally made at

oral argument)[22] for 60 additional days to satisfy Rule 26(a)(2)'s expert disclosure

---

[21] As discussed in the Background Section, Abdel-Fattah moved to dismiss the 451 Case based
on improper service and the inclusion of Christine Eno's name as the defendant in the state court
complaint.  Upon considering the return of service and the complaint, the state court concluded
that both of these arguments lacked merit.  Abdel-Fattah bases his claims in this case, in part, on
Atty. Kelly's failure to file a motion to dismiss setting forth those same, failed arguments.  In
order to succeed on this aspect of his claims, Abdel-Fattah would have needed to show "with
reasonable probability that the outcome would have been better" if Atty. Kelly had filed such a
motion. Desimini, 2015 WL 3548935, at *3 (citing Pike, 158 N.H. at 272).  The state court's
merits decisions cut in Atty. Kelly's favor as to this issue—that is, they demonstrate that, if Atty.
Kelly had filed a motion to dismiss in the 451 Case based on improper service and/or the
inclusion of Christine Eno's name in the complaint, the motion would have been denied, and
thus it would not have improved the outcome of the case for Abdel-Fattah.  Further, though
neither party directly addresses this, these facts create a strong case for dismissal of the relevant
portions of Abdel-Fattah's claims under the doctrine of collateral estoppel, or issue preclusion.
"The New Hampshire doctrine of collateral estoppel 'bars a party to a prior action from
relitigating any issue or fact actually litigated and determined in the prior action' so long as '(1)
the issue subject to estoppel [is] identical in each action; (2) the first action [ ] resolved the issue
finally on the merits; and (3) the party to be estopped [ ] appeared as a party in the first action.'"
Katz v. McVeigh, 931 F. Supp. 2d 311, 321 (D.N.H. 2013) (quoting In re Michael E., 162 N.H.
520, 523-24 (2011)), aff'd (Sept. 23, 2014).  The court does not make a ruling as to the
applicability of the doctrine here since the parties did not brief it, and Abdel-Fattah's claims are
fully and properly dismissed based on his failure to disclose an expert witness.

[22] Abdel-Fattah also requested that the court "extend the time to submit the name of an Expert
witness to 60 days" in his objection to the motion for summary judgment.  Pl.'s Objection to
Mot. for Summ. J. (doc. no. 24) at 17.  This request is improperly made in an objection to the
defendant's dispositive motion.  See L.R. 7.1(a)(1) ("Objections to pending motions and
affirmative motions for relief shall not be combined in one filing.").

requirements.  While the court might normally consider such relief for a pro se litigant, the court took time to express to Abdel-Fattah during a preliminary conference in September 2022 that he would need to present an expert witness to prove his case; Abdel-Fattah has been aware of his expert disclosure deadline since the litigation schedule was approved that month; and he has substantial experience litigating cases in several courts. Further, Abdel-Fattah has not provided any excuse for missing the deadline, either in his submissions to the court or during oral argument.  See Fed. R. Civ. P. 6(b)(1) ("When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect.").

**Conclusion.**  For the reasons state above, Atty. Kelly's motion for summary judgment[23] is GRANTED.  The clerk shall enter final judgment on the plaintiff's claims and close the case.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated:  July 28, 2023

cc:    Khaled Abdel-Fattah
       James D. Kelly
       Edwin F. Landers, Jr.
       Linda M. Smith

---

[23] Doc. no. 22.